WILKES–BARRE PUBLISHING
CO., Appellant,

v.

NEWSPAPER GUILD OF WILKES–BARRE, LOCAL 120; the Newspaper Guild AFL–CIO, CLC; Wilkes-Barre Printing Pressmen's and Assistant's Union; Wilkes-Barre Stereotyper's and Electrotyper's Union, Local 139; International Printing & Graphic Communications Union, AFL–CIO; Wilkes-Barre Typographical Union, Local 187; Wilkes-Barre Council of Newspaper Unions, Inc.; Brown, William M.; Orcutt, James H.; Sabatini, Richard V.; Maurer, Joseph A., Jr.; Wallace, John J.; Ladd, Robert; Kaporch, James; Booth, Robert, Appellees.

No. 80–2099.

United States Court of Appeals,
Third Circuit.

Argued Jan. 20, 1981.

Decided April 1, 1981.

As Amended April 6 and May 8, 1981.
Rehearing Denied May 11, 1981
(Appellant).

Rehearing and Rehearing In Banc Denied
May 11 and May 15, 1981 (Appellees).

Allan M. Kluger, Richard M. Goldberg, Hourigan, Kluger & Spohrer, Wilkes-Barre, Pa., William Caldwell Hancock (argued), Daniel C. Kaufman, King & Ballow, Nashville, Tenn., for appellant.

Warren J. Borish (argued), Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for appellees, Newspaper Guild of Wilkes-Barre, Local 120, The Newspaper Guild, AFL–CIO, CLC, Wilkes-Barre Printing Pressmen's and Assistant's Union; Wilkes-Barre Stereotyper's and Electrotyper's Union, Local 139, Wilkes-Barre Typographical Union, Local 187, Wilkes-Barre Council of Newspaper Unions, Inc., William M. Brown, James H. Orcutt, Richard V. Sabatini, John J. Wallace, Robert Ladd, James Kaporch and Robert Booth.

Donald F. Sugerman (argued), Nancy Schiffer, Miller, Cohen, Martens & Sugerman, P. C., Detroit, Mich., for appellees, International Printing and Graphic Communications Union, AFL–CIO and Joseph A. Maurer, Jr.

Before GIBBONS, VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Wilkes-Barre Publishing Company, (the Employer) a Pennsylvania corporation which publishes a daily newspaper, the *Times-Leader*, appeals from an order dismissing its three count complaint for declaratory and injunctive relief and compensatory and punitive damages. The defendants are the Newspaper Guild of Wilkes-Barre, Local 120 (the Local Guild), the Newspaper Guild (the International Guild), three newspaper trades local unions, and one newspaper trade international union, the Wilkes-Barre Council of Newspaper Unions, Inc. (the Council), a Pennsylvania corporation which publishes a daily newspaper, the *Citizens' Voice*, and eight individual residents of Pennsylvania each of whom is an official in one of the unions. The first count is brought pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, for the alleged breach of a collective bargaining agreement between the Employer and the Local Guild. The second count charges that the International Guild breached the collective bargaining agreement or, alternatively, together with the newspaper trade unions, the eight individual defendants and the Council tortiously induced a breach of the Employer-Local Guild contract in violation of section 301. The third count is a pendent claim under Pennsylvania law for tortious interference with the Employer-Local Guild contractual relationship. The trial court, 504 F.Supp. 54 (D.C.), dismissed the section 301 breach of contract claim against the Local Guild for failure to exhaust arbitration remedies, and against the International Guild for failure to state a claim upon which relief could be granted. It dismissed all the tortious interference claims for want of subject matter jurisdiction. We hold that the court should not have dismissed the suit against the Local Guild, but should have stayed it pending arbitration. We reverse the dismissal of the remaining claims and remand for further proceedings.

## I.

### The Allegations of the Pleadings

Since 1938 the Employer has had a collective bargaining relationship with the Local Guild as representative of the editorial, advertising, circulation, business and maintenance employees. The most recent collective bargaining agreement, executed on January 18, 1978, contains a "Duration and Renewal" clause, Article XXV providing:

1. This agreement shall commence on the 3rd day of October 1976, and expire on the 30th day of September, 1978, and shall inure to the benefit of and be binding upon the successors and assigns of the Publisher.

2. At any time within sixty (60) days prior to the termination of this agreement, the Publisher or the [Local] Guild may initiate negotiations for a new agreement to take effect at the expiration of the present agreement. *The terms and conditions of this agreement*

*shall remain in effect during such negotiations.* (emphasis supplied).

The collective bargaining agreement also contains Article XVII, providing:

Employees of the Publisher shall be free to engage in any activities outside of working hours *provided such activities do not consist of service performed for publications in direct competition with the Publisher,* and provided further that, without permission, no employee shall exploit his connections with the Publisher in the course of such activities. (emphasis supplied).

Finally, the collective bargaining agreement contains in Article XV(3) an arbitration clause providing:

Any matter arising from the application of this agreement (except renewal of this agreement) which cannot be settled by the grievance committee shall be referred to a standing committee composed of not more than three (3) representatives of the [Local] Guild and not more than three (3) representatives of the Publisher in an effort to adjust such dispute. Any such matter not satisfactorily settled within thirty (30) days of its first consideration may be submitted to final and binding arbitration by either party. . . .

On August 29, 1978, within sixty days of the September 30 expiration date of the contract, the Employer and the Local Guild commenced negotiations for a new agreement. Negotiations continued through October 5. During those negotiations, on September 28, the Employer's bargaining representatives delivered to the Local Guild bargaining representatives a letter stating the Employer's position that by virtue of Article XXV the collective bargaining agreement continued in effect after September 30. Simultaneous negotiations were also taking place, with the assistance of the Federal Mediation and Conciliation Service, with the newspaper trade union locals representing production employees. The complaint does not allege that the production

employees' collective bargaining agreements had a clause similar to Article XXV, but does allege that the Employer's position as to the automatic extension of the Local Guild contract was called to the attention of their representatives.

On October 6 the Local Guild and the production trades locals voted to strike. Prior to that time, and indeed prior to September 30, individual defendants John J. Wallace of the Local Guild, Robert Ladd of the Typographical Local, James Kaporch of the Pressmen's Local, and Robert Booth of the Stereotypers' Local caused the incorporation of the Council as a nonprofit corporation for the purpose of publishing a newspaper throughout the pendency of the labor dispute with the employer. For several weeks prior to the October 6 work stoppage, pre-incorporation organizational activities were undertaken for production and distribution of the *Citizens' Voice,* and at a rally held on October 6 the publishing plans were announced. Publication and distribution began on October 9, utilizing editorial, advertising, circulation and building maintenance personnel represented by the Local Guild and on strike against the Employer. The production personnel are also striking employees of the Employer. Distribution of the *Citizens' Voice* is to present and former *Times-Leader* subscribers, and advertising in it is solicited from *Times-Leader* advertisers.

On October 11, 1978 the Employer filed with the National Labor Relations Board a charge that by encouraging its employees to participate in the *Citizens' Voice* venture the Local Guild has committed the unfair labor practice of refusing to bargain in good faith in violation of section 8(b)(3) of the National Labor Relations Act. 29 U.S.C. § 158(b)(3). It later filed similar charges against the production trades locals.[1] The National Labor Relations Board has found the existence of reasonable

---

1. The Employer contends that by creating a rival business enterprise while pretending to bargain collectively, the Local Guild and the production trades locals placed themselves in such a position of conflict of interest that their bargaining was not in good faith.

cause to believe the alleged unfair labor practice has occurred.[2]

The Employer alleges that by virtue of Article XXV its collective bargaining agreement with the Local Guild, including the prohibition in Article XVII against competitive employment, continued in force after September 30, 1978. By working for the *Citizens' Voice*, the Employer contends, the Guild members violated their contract. And by inducing Guild members to breach the terms of an extant collective bargaining agreement the unions and individuals involved in the *Citizens' Voice* enterprise tortiously interfered with that contract.

All defendants filed motions to dismiss. Those motions are addressed primarily to the legal sufficiency of the complaint. In one respect, however, new matter is pleaded, and conceded by the Employer. On November 9, 1978 the Employer attempted to grieve the dispute over Guild members' working for the *Citizens' Voice*. The Local Guild took the position that the contract had terminated. The Employer then submitted the grievance to arbitration. The parties designated an arbitrator in accordance with the terms of the contract, but the Local Guild expressly conditioned that designation on the understanding that it reserved the right to challenge arbitrability in a judicial forum for the reason that the contract, including the arbitration clause, had terminated. Before the arbitrator commenced a hearing, the Employer filed the instant lawsuit. The Local Guild objected, before the arbitrator, to proceeding before two tribunals, and the parties to the arbitration agreed to hold it in abeyance pending disposition of motions in the district court to dismiss the complaint.

Since when the district court acted it considered matters outside the pleadings,

the motions were apparently considered under Fed.R.Civ.P. 12(c). No party contends, however, that there are any material issues of disputed fact, or that any party was deprived of a reasonable opportunity to present all materials pertinent to a rule 56 motion for summary judgment.

## II.

### Jurisdictional Issues

Since the Local Guild is a party to a collective bargaining agreement and the Employer sues for an alleged violation there is no question of the court's jurisdiction over that defendant. 29 U.S.C. § 185(a); 28 U.S.C. §§ 1331, 1337. However, none of the remaining defendants are parties to the Employer-Local Guild contract. The pendent state law claim against them can be entertained only if the complaint alleges some other nonfrivolous independent basis for district court jurisdiction over them. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Gagliardi v. Flint*, 564 F.2d 112 (3d Cir. 1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). *See also Kerry Coal Co. v. UMW*, 637 F.2d 957 (3d Cir. 1981). The Employer contends that a suit for tortious interference with a labor contract is a suit for violation of such a contract within the meaning of section 301 of the Labor Management Relations Act, actionable as a matter of the federal common law of labor contracts.[3] Thus we must decide whether such a claim is one within the subject matter of the district court.

---

**2.** Although the complaint does not so allege, the district court opinion discloses that the Board has stayed its unfair labor practice proceeding pending arbitration. The parties do not on appeal dispute that the Board has deferred to an arbitration forum.

**3.** Section 301 provides in pertinent part:
Suits for violation of contracts between an employer and a labor organization represent-

ing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a) (1976).

## A. The Individual Defendants

The starting point for our analysis must be the Supreme Court's decision in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). In that case the Court held that a diversity action against members of a union with which the plaintiff had a collective bargaining agreement, for tortious interference with that contractual relationship, must be dismissed for failure to state a claim upon which relief can be granted. The issue was held to be one of "govern[ment] by the national labor relations law which Congress commanded this Court to fashion under § 301(a)." 370 U.S. at 247, 82 S.Ct. at 1324. However, in determining whether federal law permitted recovery, the Court found in section 301(b) an intention to insulate individual union members from liability for breach of contract by the union of which they were members.[4]

Justice White wrote:

> The national labor policy requires and we hold that when a union is liable for damages for violation of the no-strike clause, its officers and members are not liable for these damages. Here, Count II, as we have said, necessarily alleges union liability but prays for damages from the union agents. Where the union has inflicted the injury it alone must pay.

370 U.S. at 249, 82 S.Ct. at 1325. *Atkinson* is directly controlling with respect to defendant John J. Wallace, the president of the Local Guild, at least insofar as the complaint seeks money damages. Any claim for money damages predicated either on Pennsylvania law or on federal common law of labor contracts is foreclosed as a matter of law. *See Republic Steel Corp. v. UMW*, 570 F.2d 467, 478 (3d Cir. 1978); 29 U.S.C. § 185(b) (1976).

In *Kerry Coal Co. v. UMW*, 637 F.2d 957 (3d Cir. 1981), we held that since an independent basis for federal jurisdiction existed a district court could entertain against individual union members a state law tort claim for tortious interference with contractual relations. There the plaintiff had neither a bargaining relationship nor a contractual relationship with the union to which the individual members belonged, and was not even an organizational target. Moreover the union objects which were being advanced by the violent activities complained of were secondary activities prohibited by section 8(b)(4). Neither *Atkinson* nor *Republic Steel*, in which state claims for money damages were preempted by section 301(b), dealt with the liability of individual members of labor organizations with which the employer did not have a contractual relationship. The case for federal common law preemption of the Pennsylvania law of torts was in the circumstances of *Kerry Coal* quite attenuated. *Kerry Coal*, therefore, is not dispositive of the existence of the state claim of tortious interference against the defendants in this case. Here, although only the Local Guild contract is alleged to have been extended past September 30, 1978, all the other local unions had bargaining relationships with the Employer, and the interference with the Guild contract is claimed to have been undertaken to increase their leverage in that relationship. Where the individual member liability sought to be imposed grows out of activities on behalf of a union with which the plaintiff has a bargaining relationship, and thus out of primary rather than secondary activities, the policies which the *Atkinson* Court identified in section 301(b) apply. Thus that section must be held to preempt any Pennsylvania law claim for money damages for tortious interference with the Guild con-

---

4. Section 301(b) provides:

    Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

    29 U.S.C. § 185(b) (1976).

tract as a result of such activities, and to preclude any similar federal law claim as well. The individual defendants Robert Ladd, president of the Typographical Local, James Kaporch, Secretary of the Pressmen's Local and Robert Booth, Secretary of the Stereotypers' Local all fall within this category. Three other individual defendants, James H. Orcutt and Richard V. Sabatini of the Guild International and Joseph A. Maurer, Jr. of the Pressmen's International, are situated somewhat differently, since the organizations of which they are members do not, according to the complaint, have either a bargaining or contractual relationship with the Employer. Nevertheless they, too, fall within the coverage of *Atkinson* because the complaint, fairly read, charges that they were acting on behalf of local unions which do. Thus neither under federal nor under state law does the complaint state a cause of action for money damages upon which relief could be granted against the individual defendants.

■ Our conclusion that section 301(b) immunizes the individual defendants from liability for money damages does not, however, end the jurisdictional inquiry. The complaint also seeks injunctive and declaratory relief. Section 301(b) does not deal with either. It provides that "[a]ny *money judgment* against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b) (emphasis supplied). Union officials are joined routinely in section 301(a) actions seeking the injunctive and declaratory relief permitted by *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). *See, e. g., Hampton Roads Shipping Ass'n v. International Longshoremen's Ass'n*, 631 F.2d 282 (4th Cir. 1980), *application for stay denied*, — U.S. ——, 101 S.Ct. 937, 67 L.Ed.2d 108 (1981); *Pittsburgh-Des Moines Steel Co. v. United Steelworkers*, 633 F.2d 302 (3d Cir. 1980); *Waller Bros. Stone Co. v. United Steelworkers*, 620 F.2d 132 (6th Cir. 1980).

Unlike the *Boys Markets* cases, however, which are recognized exceptions to the Norris-LaGuardia Act, 29 U.S.C. § 101, et seq., the complaint in this case falls within that Act to the extent that it seeks injunctive relief. At the pleading stage, however, we are in no position to determine whether the injunctive relief sought is prohibited by section 4 of that Act, 29 U.S.C. § 104, or permitted under section 7, 29 U.S.C. § 107. The complaint, to the extent that it seeks injunctive relief against the Local Guild strike, may fall within *Boys Markets*. If so, some of the non-party defendants may be appropriate defendants in order to make an injunction effective. *United States Steel Corp. v. Fraternal Ass'n of Steelhaulers*, 431 F.2d 1046 (3d Cir. 1970). To the extent that what is sought is not a termination of the strike, but a termination of the alleged violation of the covenant not to work for a competitor, Norris-LaGuardia may not apply. At this stage in the lawsuit we cannot say that the Norris-LaGuardia Act deprived the district court of jurisdiction over the claim for injunctive relief. Moreover, the Norris-LaGuardia Act does not prohibit the grant of declaratory relief in appropriate cases. *Bituminous Coal Operators' Ass'n v. UMW*, 585 F.2d 586, 594–96 (3d Cir. 1978). Thus even as to the individual defendants it is necessary to consider whether a claim of interference with a labor contract is one arising under the federal common law of labor contracts which would justify declaratory or injunctive relief. Since that issue is common to the liability of the defendant unions other than the Local Guild, we discuss it below.

## B. *The Local Union Defendants*

■ The local union defendants do not enjoy the section 301(b) immunity defined by *Atkinson, supra*. Nor do unions enjoy any general preemption of state law tort remedies. *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (trespassory peaceful picketing subject to state law governing trespass); *Farmer v. United Brotherhood of Carpen-*

*ters, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (NLRA does not preempt state action for intentional infliction of emotional distress); *UMW v. Gibbs*, 383 U.S. 715, 721, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966) (violent activity subject to state law). However, with the exception of the Local Guild, to which the *Boys Markets* exception may apply, the unions are protected by the Norris-LaGuardia Act. But that Act affords them no protection against damage actions or actions for declaratory relief. *See, e. g., Kerry Coal Co. v. UMW, supra; Bituminous Coal Operators' Ass'n v. UMW, supra.* Moreover it may not afford protection against unlawful tortious conduct.[5]

## C. The Council

■ The Council, the proprietor of the *Citizens' Voice* which has allegedly induced the Local Guild's breach of the collective bargaining agreement, is for purposes of subject matter jurisdiction, in the same position as the unions. In this case it happens that the competitor is a creature of several labor organizations, but analytically the section 301(a) issue would be no different if the competitor were owned by Rupert Murdoch. It does not enjoy immunity under section 301(b); it is protected by the Norris-LaGuardia Act, but to an extent which on this record we cannot determine; and may be answerable in damages for the consequences of the breach of contract it induced, assuming that inducement is proven.

## III.

### Federal Subject Matter Jurisdiction

With those general principles in mind we turn to the question whether a claim of tortious interference with a labor contract should be recognized as stating a claim under the federal common law of labor con-

tracts. The Employer urges that the question was answered affirmatively in *Nedd v. UMW*, 556 F.2d 190, 196 (3d Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978), while the defendants claim that it was answered negatively in *Teamsters Local Union No. 30 v. Helms Express, Inc.*, 591 F.2d 211 (3d Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979). Actually, neither case is completely dispositive.

■ In *Nedd* we held that a claim that trustees of a pension plan and a union which dominated the trustees had in violation of their fiduciary duties failed to enforce royalty claims in favor of the pension fund due under a collective bargaining agreement stated a nonfrivolous claim under section 301(a). We stressed, however, that the source of the rights asserted was a collective bargaining agreement. 556 F.2d at 197 n.10. We noted:

> The federal common law of collective bargaining agreements, which grows out of 29 U.S.C. § 185(a), would permit pension trust fund beneficiaries to sue, derivatively, to enforce the mine operators' payment obligations when the trustees did not. It is but a small step further to suggest that the same federal common law of collective bargaining agreements permits a suit against the Fund Trustees, and the Union which allegedly acted in concert with them for destruction of the value of the bargained-for and vested contract rights.

556 F.2d at 197. Moreover we noted that the policy considerations which favored recognition of a uniform federal law of collective bargaining agreements apply with equal force to the claim against trustees for failing to enforce the provisions of such an agreement. 556 F.2d at 197–98. Thus

---

**5.** *See, e. g., Grace Co. v. Williams*, 96 F.2d 478 (8th Cir. 1938). The Eighth Circuit quoted the legislative history of the Norris-LaGuardia Act in which it was stated:

> It is not sought by this bill to take away from the judicial power any jurisdiction to restrain by injunctive process unlawful acts, or acts of fraud or violence.

*Id.* at 481. Thus, the Act's proscription against injunctive relief is not necessarily limited to fraudulent or violent unlawful conduct. *Cf. Texaco Independent Union v. Texaco, Inc.*, 452 F.Supp. 1097, 1103 n.1 (W.D.Pa.1978). *But cf. Wilson & Co. v. Birl*, 105 F.2d 948, 952 (3d Cir. 1939); *United States Steel Corp. v. UMW*, 320 F.Supp. 743, 745 (W.D.Pa.1970).

*Nedd* stands for the proposition that, so long as the obligation sought to be enforced has its source in the provisions of a collective bargaining agreement, remedies for its enforcement may be available under section 301(a) in suits other than on the contract itself. But *Nedd* involved parties, the trustees of a pension fund and the union which dominated them, which had a fiduciary obligation to enforce the contract against employers. That is not the case with the defendants here. *Nedd* is instructive, however, in its recognition of the undesirability of relegating issues bearing on liability for violations of collective bargaining agreements to state law. Thus it is suggestive, but not controlling.

*Teamsters Local Union No. 30 v. Helms Express Inc., supra,* involved an action to set aside an arbitration award made by the Eastern Conference Joint Area Committee of the Teamsters Union. In an effort to avoid the rule of *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969), confining court review of arbitration awards to a determination of whether the award can in a rational way be derived from the agreement, plaintiffs urged that the Eastern Conference award breached a duty of fair representation. Thus, the plaintiffs contended, the more generous standard of review of the merits of arbitration awards where the union presenting the grievance has breached a duty of fair representation ought to apply. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). In rejecting this contention we noted that section 301 provides only for suits for violation of contracts, that the Eastern Conference was not a party to a contract, did not represent employees in a bargaining unit, and thus had no duty of fair representation. *Helms* simply does not speak to the issue before us because there was no collective bargaining agreement which could have been violated as a result of the Eastern Conference arbitration award. Strong evidence that the *Helms* opinion cast no doubt upon what we held in *Nedd* is that its careful author did not mention that case.

■ When *Nedd* and *Helms* are read together, what emerges as the law of the circuit as to the meaning of section 301(a) is that it reaches not only suits *on* labor contracts, but suits seeking remedies *for violation* of such contracts. That interpretation is consistent with the explicit direction of the Supreme Court that section 301 should not be read narrowly. *See, e. g., Smith v. Evening News Ass'n,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). The issue is not the nature of the remedy sought for the alleged violation, but whether the remedy sought may require that the court from which it is sought, state or federal, interpret a collective bargaining agreement. Thus the section has been construed to afford subject matter jurisdiction for the tort of violating a duty of fair representation in enforcing the contract, *Thomas v. Consolidation Coal Co.,* 380 F.2d 69, 76–77 n.7 (4th Cir.), *cert. denied,* 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967); *House v. Mine Safety Appliances Co.,* 417 F.Supp. 939, 941 (D.Idaho 1976), as well as for participating in the violation of a fiduciary duty in failing to enforce the contract, *Nedd v. UMW, supra.* It affords subject matter jurisdiction for declaratory relief as to the meaning of the contract. *Bituminous Coal Operators' Ass'n v. UMW, supra.* All suits for violation of collective bargaining agreements are governed by federal law, because Congress intended that the scope of obligation in labor contracts in or affecting interstate commerce be uniform. *Local 174, International Brotherhood of Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). It is the need for national uniformity in determining the scope of obligation agreed to in labor contracts that determines whether a federal standard is applicable, and which determines, incidentally, that there is concurrent state and federal subject matter jurisdiction.

■ In this case it is charged that a competitor of the Employer and the participating unions tortiously induced the Employer's employees to breach their collective bargaining agreement. An essential element of the cause of action, whether injunctive relief or damages is sought, is a

violation of the collective bargaining agreement. The relief sought is to recover for or prevent that violation. The label attached to the remedy as tort or contract is not dispositive of the scope of federal common law which under section 301(a) it is our responsibility to create.[6] A holding that tortious interference with a collective bargaining agreement is not a matter governed by federal law would leave open the possibility of lack of uniformity in scope of obligation which the Court in *Lucas Flour* sought to prevent, and which in *Nedd v. UMW*, 556 F.2d at 198, we said was undesirable. The claim of tortious interference with a labor contract does not involve conduct touching "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Unlike protection against violence, *United Automobile Workers v. Russell*, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958), or protection of reputation, *Linn v. Plant Guard Workers, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), or freedom from mental distress, *Farmer v. United Brotherhood of Carpenters, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), or possession of real property, *Sears, Roebuck & Co. v. San Diego District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), protection against tortious interference does not involve an area traditionally relegated to the states. Rather it involves protection of a property interest—a labor contract—which has its being in and draws its vitality from the federal common law of labor contracts. We hold, therefore, that a claim of tortious interference with a labor contract is one arising under federal common law over which the district court has jurisdiction. 29 U.S.C. § 185(a); 28 U.S.C.

§§ 1331, 1337. As with the law of labor contracts generally, in determining such a case "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate federal policy.... Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights." *Textile Workers Union v. Lincoln Mills*, 353 U.S. at 457, 77 S.Ct. at 918. This is particularly true with respect to which parties may be considered to be joint tortfeasors in the alleged inducement.

We conclude that the district court, in dismissing the complaint for lack of subject matter jurisdiction against all defendants except the Local Guild and the International Guild, erred.

IV.

*Claims Reached on the Merits*

A. *The International Guild*

The district court assumed it had subject matter jurisdiction over the International Guild because the complaint alleged that it was a party to the collective bargaining agreement. It dismissed the section 301 breach of contract claim because it found that there was no dispute over the fact that only the Local Guild was a party to the collective bargaining agreement. Having concluded that there was no federal law cause of action for tortious interference with a contractual relationship, the court did not discuss that claim insofar as it bore on the liability of the International Guild. But since there was a separate nonfrivolous section 301 claim that it was a party to the contract within its subject matter jurisdiction the court found it necessary to discuss whether it should entertain the pendent state law claim for tortious interference. It concluded that where parties to a labor dispute are charged with tortious interference with a collective bargaining agreement, at least in the absence of outrageous

---

6. *Contra Curtis Bay Towing Co. of Pa. v. National Maritime Union*, 206 F.Supp. 741, 743 (E.D.Pa.1962); *Wiggins v. Pan American World Airways, Inc.*, 83 L.C. ¶ 10,419, at 17,686. *But cf. Abrams v. Carrier Corp.*, 434 F.2d 1234, 1253 (2d Cir. 1970), *cert. denied sub nom. United Steelworkers v. Abrams*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) (no federal 301 jurisdiction over claim of civil conspiracy to violate labor contract). In none of these cases did the court analyze the problem in terms of the need to enforce a collective bargaining agreement.

or violent conduct, state law causes of action are preempted. Our analysis in Part II B above, and that of the district court are in this respect consistent. The preemption conclusion, arrived at by a somewhat different route, was correct. The issue is one of federal law. But whereas the district court would preempt state law protections of labor contracts while at the same time denying that the federal common law affords any protection, leaving the Employer wholly unprotected from tortious interference, we have held that section 301(a) grants the federal courts authority to develop such protections. Thus the dismissal of the claim against the International Guild must be reversed. Since there will be a remand it is appropriate to address the grant of summary judgment on the section 301(a) contract claim as well.

The allegations of the complaint with respect to International Guild representatives Orcutt and Sabatani, which are not disputed, would, we think, permit the Employer to prove a state of facts satisfying the agency standards laid down in *Carbon Fuel Co. v. UMW*, 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979), under which the International Guild can be held responsible for these individuals' acts. The *Carbon Fuel* agency standard applies whether the liability sought to be assessed against the International Guild is based on breach of contract or inducement of a breach. We agree with the district court that on this record the International Guild is clearly not a party to the collective bargaining agreement; it did not bind itself to the employment covenant. Its liability, if any, must result from the fact that it induced a breach of contract by the Local Guild. Thus the rule 12(b) dismissal of the International Guild on Count I must be affirmed, without prejudice to any application the employer may make to the district court for leave to amend the pleadings. The complaint does allege, though, and it is not disputed, that Orcutt and Sabatini are assisting the management of the *Citizens' Voice*, and thus assisting in the unlawful

inducement of a breach of the covenant not to work for a competitor.[7] Thus the case must be remanded for consideration of the tortious interference claim.

### B. *The Local Guild*

As in the case of the International Guild, the district court assumed it had subject matter jurisdiction because it is undisputed that the Local Guild is a party to the collective bargaining agreement enforcement of which is sought. The court dismissed the contract claim on the ground that the Employer had failed to exhaust remedies before the arbitrator. We noted above that the Employer actually grieved the dispute over violation of the agreement not to work for a competitor, and sought arbitration. This suit was commenced only when the union reserved the right to challenge arbitrability in a post arbitration enforcement proceeding. The preservation of jurisdictional objections before an arbitrator is permissible. *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Ass'n*, 574 F.2d 783, 786 n.2 (3d Cir.), *cert. denied*, 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978); *Bakery and Confectionary Workers v. National Biscuit Co.*, 378 F.2d 918, 921 (3d Cir. 1967). When the defendants called to the court's attention the language of the arbitration clause and the pendency of the arbitration proceeding, their motion could fairly be construed as an application for a stay of the pending action, insofar as subject matter jurisdiction over the contract claim was not disputed.

The court concluded that the arbitration clause is ambiguous, that the parties contracted for an arbitral determination of its meaning, and that this is what they should receive. We agree. The parties agreed that the arbitrator was to decide "any matter arising from the application of this Agreement (except renewal of this Agreement)." The ambiguity arises because of the contention that under Article XXV, the contract continued, rather than being renewed. In these circumstances the

---

7. It is also alleged that the International Guild sanctioned and ratified the work stoppage. However, the work stoppage is not alleged to be unlawful. Only the breach of the employment covenant is relied on by the Employer.

language may well be broad enough to encompass arbitrability of the dispute over bargaining unit members' working for a competitor. *See Chauffeurs, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092 (3d Cir. 1980). However in dismissing the complaint, the court decided the issue of arbitrability, leaving to the arbitral forum only the question whether there was a breach. The court's decision that the dispute is arbitrable could be construed as deciding that the contract had not terminated, a question which the Local Guild raised before the arbitrator. We think the court went too far. It certainly should not have gone forward with the contract claim against the Local Guild either. Rather than deciding any part of the contract dispute on the merits, and dismissing, it should have stayed the action against the Local Guild.

## V.

### A Stay is Appropriate

 There remains the question whether the tortious interference claim against the remaining parties ought also to be stayed pending arbitration. We hold that it should be. The parties to the contract have chosen a contractual method—arbitration—for the determination of disputes over its interpretation. Third parties, charged with interfering with the contract by inducing a violation should be entitled to have it construed by the expert tribunal selected for that purpose by the plaintiff, before having to respond to a charge of tortious conduct.

We recognize that if the Employer loses before the arbitrator on his breach of contract claim and the award becomes final by enforcement in the district court, the Employer may be collaterally estopped from proceeding against the third parties. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333–37, 99 S.Ct. 645, 652–655, 58 L.Ed.2d 552 (1979); *Consolidated Express, Inc. v. New York Shipping Ass'n*, 602 F.2d 494 (3d Cir. 1979), *vacated and remanded*, 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980). That is one of the consequences of having chosen a contractual remedy for filling in the gaps in party expectations and undertakings. The Employer cannot be heard to complain that third parties should receive the benefit of the chosen method of contract interpretation before answering to a charge that they induced a breach which the arbitrator may find did not even occur. On the other hand a victory before the arbitrators will not necessarily foreclose relitigation by the third parties in the district court. Thus on remand the entire case should be stayed pending arbitration.

## VI.

Except to the extent that the court granted summary judgment to the International Guild on Count I, the judgment appealed from will be reversed, and the case remanded for further proceedings consistent with this opinion.