Lacurtis MOORE, et al.

v.

SECRETARY OF the ARMY.

Civ. No. H–85–40 (PCD).

United States District Court,
D. Connecticut.

Feb. 14, 1986.

---

LaCurtis Moore, pro se.

W. Philip Jones, Asst. U.S. Atty., Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

DORSEY, District Judge.

Plaintiffs are the widow (Lacurtis Moore) and daughter (Tonya Moore) of Menrie W. Moore (Moore), a member of the United States Army who died while stationed in Germany. Originally, plaintiffs sought:

(a) A declaratory judgment that the acts, policies and practices of defendant, Secretary of the Army, violated plaintiffs' right to benefits. Separately, plaintiffs asserted benefits claimed by reason of their relationships to a veteran. See Original Complaint, ¶¶ 24, 30–33.

(b) A correction of the service record of Moore.

(c) Five Million Dollars compensation from the Department of the Army for the denial of benefits.

Defendant moved to dismiss for want of jurisdiction, Rule 12(b)(1), Fed.R.Civ.P., and for failure to state a claim on which relief might be granted. Rule 12(b)(6). Plaintiffs moved to amend their claims.[1] Now plaintiffs seek:

(a) A declaratory judgment that defendant's acts, policies and practices violate unspecified federal rights of plaintiffs.

(b) Correction of the service record of Moore, without precise identification of the record to be corrected.

(c) From the Department of the Army, $5,000,000 compensation for the errors in Moore's military records; the widow's mental upset from having read the records as claimed to be erroneous; the loss of the widow's opportunity to be with her husband at his death; for the necessity of the widow's trip to Germany in relation to Moore's death and from learning of his death; funeral expenses; loss of companionship and marital rights; unspecified physical consequences of the death; loss of financial assistance from survivor's benefits; the widow's inability to travel and visit relatives by reason of her loss of benefits; the need and effort to correct the record; and to plaintiff daughter from the loss of companionship and a chance to share her life with her father.

Defendant has supplied the Army investigative record relative to the death of Moore; the Army regulations pertinent to that investigation; an extract from the Manual for Court Martials, United States, 1951; the record of the court martial of Marion L. Cook; the record of the Army Board for Correction of Military Records (ABCMR) relative to plaintiffs' requests; and the Army regulation (AR–15–185, 5/17/77) which pertains to the procedures of ABCMR. To the extent that any of these materials are considered, defendant's motion must be considered and decided as a motion for summary judgment, where the test is the existence of a genuine issue of material fact. As a motion to dismiss, the question is whether there are any allegations which, if proved, would entitle plaintiffs to relief. Treatment, below, of the several aspects of defendant's motion will reflect the tests applied.

*Facts*

Moore was an enlisted man in the Army in 1968, then stationed in Germany. On July 4, 1968, there was an altercation between at least two white soldiers, twin brothers Marion and Marlon Cook, and a group of at least five black soldiers. The confrontation initiated in a local bar, although the dispute initially arose between one of the Cook brothers and one Witherspoon, one of the black soldiers, a week earlier. The Army investigation identified Witherspoon and Moore as members of the group of black soldiers involved in the altercation which resulted in their deaths and that of a third member of the group. One of the Cook brothers appears to have wielded a knife in the altercation which resulted in the three deaths and was charged criminally. He claimed justification for that use, as a matter of self-defense, at his court martial.

An investigation was performed by Army personnel prior to the court martial.

---

**1.** Said motion appears not to be opposed, understandably, as it eliminates some claims which defendant asserts plaintiffs cannot make. The motion is granted.

The record of that investigation, including the witness interviews and report of the investigation officer, is part of the record, Exhibit D, and is the focus of plaintiffs' complaint. The investigating officer (IO) determined from less than totally clear and consistent statements that Moore went originally to the bar and to the scene of the altercation with the group of black soldiers. He was then on a pass. It was also found that he remained at the scene when the altercation was obviously imminent and while it was taking place. His acts were not precisely described, but he died as a result of the altercation. Marion Cook was seemingly sufficiently culpable as appropriately to be charged criminally, but with less than premeditated homicide. However, he was acquitted at his court martial.

*Relief Sought*

■ Despite plaintiffs' disclaimer, their original purpose in initiating the review by the ABCMR and in bringing this lawsuit was to qualify themselves for benefits to which survivors of veterans might be entitled. That purpose is reflected in the request to the ABCMR and in the original complaint filed in court. Indeed, some vestiges of that goal remain in the present amended complaint. Such is contrary to the bar to a court's review of a VA denial of benefits. 38 U.S.C. § 211(a). *See Pappanikoloaou v. VA*, 762 F.2d 8 (2d Cir. 1985). Nonetheless, plaintiffs may not be precluded from seeking intermediate relief, if lawful, even though then they may well hope that a corrected Army record might warrant reconsideration by the VA of Moore's status and, in turn, their entitlement to benefits.

What is not clear is the record that plaintiffs wish changed. Nowhere do they specify the specific document they want changed. Perhaps it is the DA Form 2173, Statement of Medical Examination and Duty Status, which they want changed, which appears to be the face sheet of the IO's report of his investigation into Moore's death. Neither the relief specified in the amended complaint, nor plaintiffs'

memorandum in opposition to the motion to dismiss, identifies such a document. What their memorandum suggests is a more generic correction, a change in the findings of the IO. While the Army's investigation is not formally related to the VA determination, it was provided to the VA along with the record of the court martial of Marion Cook. The question presented here is whether plaintiffs, now having restricted their request to the very limited record correction, have the right to present that claim here.

*Motion to Dismiss*

A.

Taken first as a motion to dismiss for want of jurisdiction, defendant's claims will be assessed separately:

■ 1. The suit cannot lie on the basis of the jurisdiction cited by plaintiffs, 10 U.S.C. § 1552(a). That statute does not vest jurisdiction in the court. Specifically, it does not authorize this court to entertain a review of a ruling of the ABCMR. The Army regulations cited by plaintiffs, AR600–10 and ¶ 5–10k, cannot and do not create jurisdiction in the court. Only congressional acts can create jurisdiction. Plaintiffs are acting pro se, however, and their complaint is to be construed liberally in deference to their lack of familiarity and skill in legal technicalities. *Haines v. Kerner*, 404 U.S. 519, *reh'g denied*, 405 U.S. 948 (1972). While plaintiffs have not identified an appropriate statute on which jurisdiction would lie, plaintiffs may not be precluded from pursuing this action when jurisdiction plainly lies. Plaintiffs do have the right to petition the ABCMR for corrections of military records, and its determinations are reviewable in court for the existence of any evidence of an arbitrary or capricious decision which is not founded on substantial evidence. *Chapel v. Wallace*, 462 U.S. 296, 303 (1983).[2] An act of Congress created the right to petition the ABCMR for correction. Plaintiffs' claim is a civil action founded on that act and thus jurisdiction would plainly lie. *Haines v.*

---

**2.** Plaintiffs also assert a waiver of immunity, but plaintiffs mere say so is not sufficient to constitute a waiver of governmental immunity, which only Congress can grant.

*United States,* 453 F.2d 253 (3d Cir.1971). The motion to dismiss for want of jurisdiction is denied.

■ 2. The motion to dismiss would have to be granted to the extent that plaintiffs seek a review of a denial of benefits by the VA. There is no such jurisdiction. 38 U.S.C. § 211(a). Plaintiffs will be held to their disclaimer of any assertion of a right to review of the VA's denial of benefits. The motion to dismiss, so far as their claim might seek such a review, is denied on the basis that no such review is claimed here.

### B.

Taken as a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P.:

1. Plaintiffs cannot claim money damages:

■ (a) The claim of damages asserted is from the Department of the Army, which is not a party here.

■ (b) Plaintiffs' claim is in reality a claim against the United States, which has not been shown to have waived its sovereignty as to such a claim, thus presenting the court with a fundamental jurisdictional defect. 15 Wright, Miller & Cooper, *Federal Practice and Process,* § 3654 at 156–59 (1976). Unless it has consented to a particular type of action, the United States may not be sued. *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *see Affiliated Ute Citizens v. United States,* 406 U.S. 128, 141 (1976).

■ (c) Plaintiffs' claim of the violation of unspecified federal rights is conclusory. Any claim of the violation of constitutional rights must be specific and the present claims are insufficient. Giving plaintiffs every benefit of the doubt, there is no allegation that would permit a recovery for violation of any specific constitutional right.

■ (d) The specified grounds of damage to plaintiffs, while setting forth consequences to them arising from Moore's death, at best would be a derivative claim. Yet, there is no showing by any stretch of the pleadings of any responsibility on the

part of defendant for Moore's death. Plaintiffs have tried to link their damage claims to an incorrect military record. If plaintiffs are correct that the record is incorrect, the only relief to which they would be entitled before the ABCMR, and can thus be reviewed by this court, is a correction of that record, 10 U.S.C. § 1552, and not an award of damages for the mostly intangible injuries plaintiffs allege.

2. To the extent of plaintiffs' claims on the foregoing bases, the motion to dismiss is granted.

### C.

■ Defendant's motion, as grounded on the absence of legal authority to order correction of Moore's record, must be considered against the entire record and thus decided under Rule 56, Fed.R.Civ.P. What plaintiffs seek is a finding of a failure of the ABCMR to accord them the right of reconsideration of what has been recorded in Moore's service record. The statute, 10 U.S.C. § 1552, does not give plaintiffs the right to dictate the contents of that record. That decision has been left for determination, at the first instance, to the Army. Assuming, arguendo, without so holding, that the investigation report is part of Moore's service record, at best plaintiffs are entitled to fair consideration by the ABCMR of whether that record is incorrect. If the ABCMR did not fairly consider plaintiffs' claims that the record is incorrect, then the right created by 10 U.S.C. § 1552 has not been provided. Yet, this does not mean that plaintiffs are entitled to a de novo determination as to corrections of the record, nor are they entitled to correcting action by ABCMR merely because they say that the record is incorrect. Plaintiffs' right is to a review of the ABCMR's action, the test being whether the Board's action was arbitrary or capricious. Such would have been the case if the Board decided that the record was not incorrect in the face of a lack of substantial evidence to substantiate any material fact recited in that record. *Chapel,* 462 U.S. at 303. The report of the IO set forth all of

the interview statements obtained. Those cannot be changed. There is nothing to alter the fact that certain witnesses said certain things. Whether those things were or were not true, the record does not show that the statements do not reflect what the witnesses said. It is true, as plaintiffs claim, that the investigative report does not present an uncontroverted description of what occurred at and before Moore's death. It is also true that every fact that the IO found is not supported by unequivocal assertions of one or more of the witnesses. Obviously the IO drew inferences from the evidence presented to him. Such is not improper. The IO expressed some of his views in terms of "feeling," but that manner of expression is not determinative. The controlling factor is whether the IO's findings were reasonably supported by some evidence within the record before him. The ABCMR found, after all plaintiffs' requests were considered, that there was no basis to correct Moore's record. Plaintiffs have presented no evidence to the contrary. The correctness of the Board's decision that the IO's report need not be corrected must be based upon the existence of substantial evidence in the record presented to the IO which supports the challenged findings and conclusions in that report. Unfortunately, plaintiffs have chosen to meet defendant's motion by simply revoicing their challenges to defendant's "facts." What is relevant is plaintiffs' contention that the IO could not have made the findings and conclusions in his report because there was no evidence in the record before him to substantiate such. Specifically, plaintiffs assert the want of proof of the following:

(a) that Moore was killed in a fight in which he intentionally involved himself;

(b) that Moore's involvement was not disputed;

(c) that Moore willingly engaged in, if not actively sought, a fight in which deadly force was likely to be employed;

(d) that Moore could have avoided the fight;

(e) that Moore was killed by Marion Cook;

(f) that there was evidence of Moore being under the influence of alcohol; and

(g) that at Marion Cook's trial there was overwhelming evidence of Moore's willing participation in the fight.

Plaintiffs' argue that:

(a) the record reflects certain persons as involved in the fight as identified by color and not by name;

(b) Moore's involvement was inferred from his color; and

(c) there was evidence accepted of Moore having ingested alcohol although no blood alcohol test was reported.

Plaintiffs argue that the absence of a Mr. Herrick, reported on leave at the time of the court martial, precluded the IO from making findings that Herrick made. Such a speculative assertion cannot be the basis for correcting what the IO reported. It is irrelevant to what "line of duty" determination would have been made by the Army. None was made. What the Army might have done would be speculative. To argue other possibilities is to dispute the IO's inferences which, if reasonably founded, cannot be changed. The question is not whether other inferences were possible or would have been drawn by another individual or tribunal, but whether the IO's inferences were reasonably based on evidence presented to him. Likewise, plaintiffs' citation of inconsistent and contradictory statements by persons who were at the time of the incident geographically proximate thereto does not require any change in the judgments made by the IO nor by his superiors in their review of his report. Faced with inconsistencies and contradictions, it is within the peculiar province of the investigating officer initially to determine the facts. If his findings are supported by substantial evidence, they will stand and need not be corrected, in accordance with the uniform code of military justice. That other witnesses might have been interviewed is likewise irrelevant, particularly when no offer is made as to what other witnesses would have said. Yet the existence of problems in determining what hap-

pened does not bar the IO from doing his best to do so. What controls is whether his decisions as to what evidence he will credit resulted in findings that are based on substantial evidence. It is not determinative that Moore is not mentioned by name, as long as it was reasonable from the evidence to infer Moore's involvement. The IO's recommendation of a court martial and the particular charges therein and his reasons therefor are irrelevant to the question before this court as well as speculative. So also is the conduct of the trial. The trial came after the investigation. It cannot bear on the correctness of the report of the IO.

The record presented to the IO has been reviewed by the court. It clearly includes evidence that:

1. Prior to the altercation, five black soldiers were in the 369 bar.

2. The Cook brothers had been in the 369 bar.

3. One of the blacks, a short man, apparently identified as Elijah Witherspoon, probably had had an ongoing dispute with one of the Cook brothers from a point in time prior to the evening in question. There was evidence that he had threatened one of the brothers. He was prepared to engage one of the Cook brothers, at least, in a fight. Witherspoon was described as 5' 6" tall and weighing 110–120 lbs.

4. The other four black soldiers were recruited either at the 369 bar or at the enlisted men's club by Witherspoon and had come to the bar aware of Witherspoon seeking out the soldiers with whom he had had an argument which he intended to pursue. That group went to the bar with Witherspoon in pursuit of his intention to engage in an altercation. The Cook brothers left the bar along with a group of other soldiers with whom they had been sitting in the bar. The black soldiers left the bar immediately after the Cooks and their group had left and thus could well have been found to have been prepared to support, if not to join, Witherspoon in the fight which he was plainly seeking and which eventually ensued.

5. The Cook brothers and their group headed back toward their barracks.

6. The five black soldiers surrounded the Cook brothers. Witherspoon and one of the black soldiers could have been found to have struck the first blows, one with a beer bottle, the other with a belt which was equipped with a metal buckle.

7. Sequentially, the Cook brothers, or at least one of them, engaged in a fight with two of the black soldiers relatively close to the 369 bar. The two black soldiers were mortally wounded in the course thereof. One of those black soldiers, identified from the fact that his body was found at the scene, was Moore.

8. One of the Cook brothers had a knife which was used in the fight. Both of the Cooks suffered injuries in the fight.

9. After the injuries had been sustained by two of the blacks who were found at the initial scene of the fight, later identified as Witherspoon and Moore, the fight was continued at a point removed from the locus of the initial fighting after the Cooks had attempted to leave the fight scene and get back to their barracks. They were followed to the continued point of the fight by three of the black soldiers, one of whom was also injured in the continuation of the fight. The three black soldiers were identified as being involved in the fighting with one or more of the Cook brothers on the basis that they were injured, died and their bodies were all found at the scenes. Each of the three who died had been in the group which was originally in the 369 bar, having come there with Witherspoon and followed the Cook brothers out of the bar to the street where the altercation occurred. Witherspoon had earlier made threats directed against one of the Cook brothers. Witherspoon had come back to the 369 bar with members of the group of black soldiers for the purpose of engaging in a fight. Thus, each of the three members of the group who were killed, including Moore, was part of the group which pursued the Cooks out of the bar and to the points at which the altercation occurred with a clear knowledge and understanding

that an intended altercation would ensue. The injuries and deaths occurred in the course of or as a result of the altercations which ensued.

10. Plaintiff's decedent was one of the three killed and, although he was not specifically identified in the course of the events which led up to and constituted the altercation, he was properly identified as having been among the group of black soldiers who had come to the 369 bar and then followed the Cook brothers out of the bar with Witherspoon. Further, plaintiff's decedent was one of the three members of the group of black soldiers who had individually and as part of the group engaged in the altercation with one or both of the Cook brothers in the course of which Moore sustained the injuries from which he died.

In considering the foregoing, statements contained in the investigative officer's report from the witnesses Racik, Marion Cook, Arnold Raymond, David Van De Wiele, William Barten Baker, Marvin Carte, Garth Fike, Perry Young and Julius Boze were reviewed.

The record thus contains substantial evidence from which the IO could reasonably have made the findings challenged by plaintiffs. Accordingly, plaintiffs are not entitled to the relief that they have prayed. The refusal of the ABCMR to correct the record of Menrie W. Moore as claimed by plaintiffs is not unwarranted. The action of the ABCMR was not contrary to law as that Board could reasonably have found that the findings of the IO were reasonably substantiated by evidence in the record before him. Thus, the court may not order the ABCMR to reconsider its determination nor to correct the record. Plaintiffs were entitled to a reasonable review of the record by the ABCMR and it has done so. Plaintiffs are entitled to no more.

For the foregoing reasons, the motion to dismiss the complaint, considered in part as a motion for summary judgment, is granted.

To the extent that the motion to dismiss has been considered as a motion for summary judgment and granted, judgment shall enter for defendant.

SO ORDERED.