**Ramona COLE, Plaintiff,**

**v.**

**PATHMARK OF FAIRLAWN, Supermarkets General Corporation, and Thomas Caffrey, Defendants.**

**Civ. A. No. 86–4859.**

United States District Court,
D. New Jersey.

Oct. 30, 1987.

Marvin Waxman, Rutherford, N.J. for plaintiff.

Hal R. Crane, Woodbridge, N.J., for defendants Pathmark of Fairlawn and Supermarkets Gen. Corp.

BISSELL, District Judge.

Plaintiff Ramona Cole ("Cole") filed a complaint against defendants Pathmark of Fairlawn ("Pathmark"), her former employer, Supermarkets General Corporation ("Supermarkets General"), the parent corporation of Pathmark, and Thomas Caffrey ("Caffrey"), a security guard at Pathmark alleging several claims arising out of her arrest for shoplifting in the store and the subsequent termination of her employment. This action, originally filed in the Superior Court of New Jersey, was removed to federal court by defendants Pathmark and Supermarkets General which alleged that this court had original jurisdiction over this matter under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Presently before the Court is defendants' Pathmark and Supermarkets General's ("the Pathmark defendants") motion to dismiss

or in the alternative for summary judgment.

## FACTUAL BACKGROUND

At the time of the incident underlying this action, plaintiff was employed as a cashier at Pathmark. After completing her shift on November 13, 1984, Cole remained in the store and went shopping. She stopped at the Service Center, where higher-priced items were kept, and began to examine an aromatic disc player. Items kept at the Service Center are usually paid for at the Service Center, however, plaintiff alleges that with the cashier's permission she carried the item away from the counter with the intention of paying for it "up front." Cole claims that she then noticed her boyfriend, for whom the disc player was to be a gift, come into the store, so she hid it under her smock. Plaintiff then placed the merchandise down in a different aisle.

Defendant Caffrey, the store security guard, subsequently detained Cole in the store manager's office for shoplifting. After questioning, plaintiff agreed to sign an apology as well as a general release. The police were then called and Cole was arrested and charged with theft. Plaintiff was ultimately found not guilty of shoplifting.

On November 15, 1984, Cole was informed by her union representative that she had been terminated and that nothing could be done until after her case went to trial. Following her acquittal, a meeting was arranged between the plaintiff, the union representative and Pathmark officials. At this meeting in October 1985, defendants rejected her request for reinstatement, backpay and attorney's fees. It is undisputed that after this meeting, Cole was told by her union representative that the union could do nothing more for her. Plaintiff instituted this action in state court on November 18, 1986.

In her complaint, Cole alleges that defendants falsely imprisoned her (First Count) and then instigated and/or instituted criminal proceedings against her without probable cause (Second Count). In addition, she claims that the Pathmark defendants breached her employment contract when they terminated her without good cause, notice or a hearing (Third Count). Finally, Cole contends that defendant Caffrey, with malice and without probable cause, initiated her false arrest, malicious prosecution and wrongful discharge, thereby tortiously interfering with her business relationship and contractual rights with Pathmark and Supermarkets General (Fourth Count). Since these actions of defendant Caffrey were committed both in his individual capacity and as an agent and employee of the other defendants, Cole claims that Pathmark and Supermarkets General are liable for tortious interference with her contract rights under the theory of *respondeat superior* (Fourth Count).

## DISCUSSION

In their present motion, the Pathmark defendants assert several grounds for dismissal and/or summary judgment. First, they argue that plaintiff's tort claims are preempted by § 301 of the Labor–Management Relations Act and accordingly, her remaining § 301 claim is time barred under the applicable six-month statute of limitations. These defendants also assert that Cole cannot maintain the present action for breach of the collective bargaining agreement because (1) she cannot establish that the union breached its duty of fair representation, (2) Pathmark acted in accordance with the terms of the collective bargaining agreement, and (3) she has failed to exhaust her remedies under the grievance procedures of the collective bargaining agreement. In addition, the Pathmark defendants contend that plaintiff's common law tort claims are barred by the New Jersey Workers' Compensation Act, N.J.S. A. 34:15–1 *et seq.*, and her claim for false imprisonment must be dismissed because there was probable cause to arrest her for shoplifting.

The Notice of Motion to Dismiss or for Summary Judgment filed by the defendants states that they shall rely on their brief as well as deposition transcripts and affidavits. Plaintiff Cole has opposed the

present motion with similar supporting materials. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, defendants' motion will be addressed as a motion for summary judgment.

## A. *Preemption*

Defendants assume that the Third Count of plaintiff's complaint, which alleges a claim for breach of her employment contract, states a claim under § 301 of the Labor Management Relations Act ("LMRA") for breach of a collective bargaining agreement. This assumption is based on the fact that at the time of her discharge, plaintiff was a member of Local 1262 and the terms and conditions of her employment were governed by a collective bargaining agreement between the union and her employer. In the present motion, defendants also assert that plaintiff's tort claims arise out of her termination from employment and are thereby preempted by federal labor law.

■ In opposition to the present motion, plaintiff contends that her claim for damages arising out of the alleged breach of her employment contract is not subject to the jurisdiction of the LMRA, nor covered by the terms of the collective bargaining agreement, because it was an exercise of managerial discretion.[1] She also argues that her tort claims are not preempted by federal labor law since these causes of action exist independently of the collective bargaining agreement.

■ Section 301 of the LMRA provides federal jurisdiction for suits alleging violations of contracts between an employer and a labor organization representing employees. 29 U.S.C. § 185(a).[2] It is well established that a suit brought by an individual employee against his employer for breach of a collective bargaining agreement is among the class of cases that falls within the purview of § 301. *Smith v. Evening News Assn.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

In the Third Count of plaintiff's complaint, she alleges

> 2. On or about November 13, 1984, plaintiff Ramona Cole was a member of UFW Local 1262 of the AFL–CIO and, as such, was subject to an agreement between the said union and the defendants Pathmark and Supermarkets General Corporation.
>
> \* \* \* \* \* \*
>
> 4. In contravention of her contractual and legal rights plaintiff was fired without good cause....

Complaint at 4. Plaintiff's assertion that this claim for damages for defendants' breach of her employment contract does not arise under § 301 of the collective bargaining agreement is clearly contrary to the Supreme Court's statements as to § 301's preemptive effect.

Preemption under § 301 was addressed by the Supreme Court in *Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists and Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), which decision, the Court later explained, affirmed

> that the petitioner's action 'arose under' § 301, and thus could be removed to federal court, although the petitioner had

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

1. Plaintiff is not estopped from raising this argument now, even though she did not move to remand the present action back to state court when it was removed here by the Pathmark defendants who asserted that this Court had original jurisdiction over the breach of contract count of plaintiff's complaint under § 301 of the LMRA.

2. Subsection (a) of § 301 reads in pertinent part:

undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available only under state law. The necessary ground of decision was that the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983); *see also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Thus, it is plain that in the present case, plaintiff's claim for breach of her employment contract does arise under § 301.

■ A much harder question is whether plaintiff's tort claims in the First, Second and Fourth Counts of her complaint are preempted by § 301. As with state law contract actions, state law tort claims by an employee against his employer have been held to be preempted by § 301. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904. Whether a certain state law claim is preempted by federal law is a question of congressional intent. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). Although Congress has never explicitly stated to what extent it intended § 301 to preempt state law, *Allis–Chalmers,* 471 U.S. at 208, 105 S.Ct. at 1909, the Supreme Court has recently explained that:

> questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* at 211, 105 S.Ct. at 1911.

In *Allis–Chalmers,* the Supreme Court enunciated the test for preemption of a tort claim as whether the tort "confers nonne-gotiable state-law rights on employers and employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912. In holding that an employee's state tort claim of bad faith, based on his employer's mishandling of his disability payments due under a benefit plan that was part of a collective bargaining agreement between his employer and his union, was preempted by § 301, the Court in *Allis–Chalmers* concluded:

> We ... hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law [as where the plaintiff failed to make use of the grievance procedure established in the collective bargaining agreement].

*Id.* at 220, 105 S.Ct. at 1916 (citation omitted).

The Court made clear that parties cannot escape the preemptive effect of § 301 by casting their claims as tort actions rather than contract claims. *Id.* at 210, 105 S.Ct. at 1910. The key to determining the scope of preemption is not how the complaint is cast, but whether those claims can be resolved only by reference to the terms of the collective bargaining agreement. *Id.* at 213, 105 S.Ct. at 1912. "Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.* at 211, 105 S.Ct. at 1911. Therefore, the focus of an inquiry determining § 301 preemption is the nature of the state law claims because such claims, which are independent of the collective bargaining agreement, are not preempted by § 301. *Id.* at 213, 105 S.Ct. at 1912.

Plaintiff claims that under the test set forth in *Farmer v. United Brotherhood of Carpenters and & Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), her

tort claims are not preempted by the LMRA. The *Farmer* Court found that the decision to pre-empt state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect of concurrent judicial remedies upon the administration of national labor policies. *Id.* at 301, 97 S.Ct. at 1064 (quoting *Vaca v. Sipes,* 386 U.S. 171 at 180, 87 S.Ct. 903, 911, 17 L.Ed. 2d 842 (1967)). Federal labor law will be found to preempt state law unless (1) the state has a substantial interest in the regulation of the conduct at issue, and (2) this interest does not threaten undue interference with the federal regulatory scheme. *Id.* 430 U.S. at 302, 97 S.Ct. at 1064.

In concluding in *Farmer* that a union officer's claim for intentional infliction of emotional distress based on a campaign of personal abuse and harassment brought against the union was not preempted, the Court based its ruling on the fact that federal labor laws do not protect the "outrageous conduct complained of by the plaintiff," and that the state had a substantial interest in protecting its citizens from that kind of abuse. *Id.* at 301–03, 97 S.Ct. at 1064–65. Moreover, concurrent federal-state court jurisdiction under those facts was permissible because the state tort was unrelated to the employment discrimination. *Id.* at 305, 97 S.Ct. at 1066. A recurrent theme in *Farmer,* as well as in other Supreme Court cases which have addressed the preemption issue, was that concurrent state court jurisdiction is proper and consistent with effective administration of the federal scheme where the state law claims can be adjudicated without regard to the merits of the underlying labor controversy, or the conduct at issue involves state law principles of only incidental application to conduct occurring in the course of a labor dispute. *Id.* at 300, 304, 97 S.Ct. at 1063, 1065.

It is well settled that suits for breaches of collective bargaining agreements under § 301 are governed by a body of specialized federal common law and, as a consequence of the federal interest in uniformity of result, state law claims which concern conduct covered by the terms of the collec-

tive bargaining agreement are necessarily preempted. *See, e.g., Allis–Chalmers, Corp.,* 471 U.S. 202, 105 S.Ct. 1904. Nevertheless, the Supreme Court has recognized several varieties of state law claims that fall outside the preemptive sweep of federal labor law. *See Int'l Brotherhood of Electrical Workers, AFL–CIO v. Hechler,* —— U.S. ——, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (workplace safety); *Belknap, Inc. v. Hale,* 463 U.S. 491, 103 S.Ct. 3171, 77 L.Ed.2d 798 (1983) (employer misrepresentations to replacement workers); *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (union trespassing); *Farmer,* 430 U.S. 290, 97 S.Ct. 1056 (outrageous union conduct resulting in employee emotional distress); *Linn v. United Plant Guard Workers Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (malicious defamation); *International Union, United Automobile Aircraft and Agricultural Implement Workers (UAW–CIO) v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (mass picketing accompanied by threats of violence). In permitting these state law claims, the Court has emphasized that they threatened no interference with the operation of federal labor law and involved issues unrelated to the central concerns of federal labor statutes.

Under the Supreme Court's preemption analysis, it is clear that plaintiff's claim in the Fourth Count for tortious interference with business relations and contract rights is preempted by § 301. Cole claims that the Pathmark defendants are liable under a theory of *respondeat superior* for the actions of its employee, Caffrey, whose actions "tortiously interfered with plaintiff's business relationships and contractual rights with the defendants Pathmark and Supermarkets General Corporation." (Complaint, Fourth Count at ¶¶ 4, 5). There is no question that an essential element of this cause of action is plaintiff's contractual and business relationship, which is premised on the collective bargain-

ing agreement between Local 1262 and the Pathmark defendants.

The Third Circuit has held that "where parties to a labor dispute are charged with tortious interference with a collective bargaining agreement, at least in the absence of outrageous or violent conduct, state law causes of action are preempted." *Wilkes–Barre Publishing Co. v. Newspaper Guild of Wilkes–Barre,* 647 F.2d 372, 381–82 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). Unlike causes of action seeking protection against possession of real property, *Sears, Roebuck & Co.,* 436 U.S. 180, 98 S.Ct. 1745, or freedom from outrageous conduct causing mental distress, *Farmer,* 430 U.S. 290, 97 S.Ct. 1056, or protection of reputation, *Linn,* 383 U.S. 53, 86 S.Ct. 657, or protection against violence, *Russell,* 356 U.S. 634, 78 S.Ct. 932, protection against tortious interference does not involve conduct touching interests deeply rooted in local feeling and responsibility and thus traditionally relegated to the states. *Wilkes–Barre Publishing Co.* 647 F.2d at 381. Rather, the property interest being protected, a labor contract, has its being and draws its validity from the federal common law of labor contracts. *Id.* Accordingly, the Fourth Count of plaintiff's Complaint as stated against the Pathmark defendants is preempted by § 301.

■ It is far less clear whether Cole's claims against her employer for the torts of false arrest and malicious prosecution are preempted by § 301. While precedent is sparse, this Court finds its analysis must begin with the Supreme Court's decision in *Linn v. United Plant Guard Workers.* There, the Court found plaintiff's claim for libel based on a defamatory statement published during the course of a union organizing campaign was not preempted by the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. § 141 *et seq.,* 383 U.S. at 61, 86 S.Ct. at 662. The Court limited the scope of its decision by finding that the exercise of state jurisdiction in those circumstances would be of peripheral concern to the NLRA only where it was redressing libel committed with actual malice. *Id.*

Moreover, in reaching this conclusion, the Court was persuaded by the fact that the NLRA is unconcerned with "personal" injury caused by such malicious behavior which can be assessed without regard to the merits of the labor controversy. *Id.* at 64, 86 S.Ct. at 664.

This Court also finds the Tenth Circuit's decision in *Viestenz v. Fleming Companies, Inc.,* 681 F.2d 699 (10th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 303, 74 L.Ed.2d 284 (1982), instructive. Viestenz, an employee at a supermarket, was suspected of stealing merchandise from the store on a regular basis. The store's management and security personnel confronted him during an interview about the theft charges. At the conclusion of the interview, Viestenz gave a handwritten statement voluntarily admitting his theft from the store. He was discharged the following day. Viestenz chose not to pursue the mandatory grievance procedure set forth in the collective bargaining agreement under which he worked. Instead, he filed a civil action alleging claims for wrongful discharge and intentional infliction of emotional distress. On appeal, Flemming urged the Court to find the tort of outrage claim preempted by § 301. In finding this claim preempted, the Tenth Circuit held that the harm about which Viestenz complained in his tort of outrage claim—emotional suffering occurring after his firing and related to his concern over providing for his family—resulted from his discharge and not from any improper conduct by the parties who investigated and interviewed him about the theft charges. *Id.* at 704. Since the harm for which he sought recovery resulted from his discharge, the claim was preempted because his discharge was within the exclusive jurisdiction of the federal regulatory scheme. *Id.*

Like *Linn,* Cole's claims for false arrest and malicious prosecution allege that she suffered personal injury as a result of the defendants' malicious behavior. Unlike *Viestenz,* however, the injury about which Cole complains—humiliation, injury to her good name, psychological damages and expenses, and deprivation of her liberty—did

not result from her discharge but from the investigation and her subsequent arrest on theft charges. Since plaintiff's claim does not flow from her discharge, it is only peripherally concerned with the merits of her labor dispute and thus is not preempted by § 301.[3]

Accordingly, this Court concludes that plaintiff's state law tort claims for false arrest (First Count) and malicious prosecution (Second Count) are not preempted by § 301. However, the Court holds that Cole's state law tort claim for intentional interference with contractual and business relations (Fourth Count) is preempted and must be dismissed.

**B.** *Exhaustion of Grievance Procedures and the Statute of Limitations*

■ Now that it has been determined that the Third Count of plaintiff's complaint states a claim under § 301, the Court turns its attention to the arguments raised by the Pathmark defendants as grounds for dismissal of Cole's § 301 claim. The Court will first address the issue of plaintiff's failure to exhaust the grievance procedures set forth in the collective bargaining agreement and then the statute of limitations question.

Pursuant to the collective bargaining agreement between Local 1262 and Supermarkets General, once these parties have been unable to resolve a difference between them by a fact-to-face meeting,

> then such dispute, difference or grievance shall be referred to arbitration by either party by notice in writing.

Sheeran Aff., Exh. D, Article 14(a) at 16. In their present motion, the Pathmark defendants claim that Cole's failure to exhaust her contractual remedies, that is, to seek arbitration under the collective bargaining agreement before instituting this suit, is grounds for dismissal.

In opposition, Cole claims that she "could not seek the final step of the grievance procedure, arbitration, because that remedy was administered by the union which agreed with Pathmark that plaintiff's dis-

charge was justified and did not seek to arbitrate her discharge." Pl. Brief at 23. She claims that where, as here, pursuit of grievance procedures are inadequate or would be a futile gesture, exhaustion is not required.

To maintain a § 301 claim, a plaintiff must demonstrate exhaustion of the grievance and arbitration remedies under the applicable collective bargaining agreement. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). *Maddox* was an action brought by an employee against his employer for severance pay due under a collective bargaining agreement existing between his union and the employer. The Court dismissed the employee's claim holding that general labor policy requires that all employees asserting a contract grievance first "attempt" use of the contract grievance procedure agreed to by the union and employer before seeking legal redress in the courts. *Id.* at 652, 85 S.Ct. at 616. Since Congress has expressed a clear policy supporting contract grievance procedures as the preferred method for settling labor disputes, an employee must first afford the union the opportunity to act on his behalf. *Id.* at 653, 85 S.Ct. at 616. This rule would not preclude redress within the courts if the parties to the collective bargaining agreement agreed that contract grievance procedures were not the parties' exclusive remedy. *Id.* at 657–58, 85 S.Ct. at 618–19. However, the Supreme Court also noted that where the union "refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available." *Id.* at 652, 85 S.Ct. at 616.

An exception to this well established principle requiring exhaustion exists where an employee alleges that his union breached its duty of fair representation in failing to take the employee's grievance to arbitration as it could have under the collective bargaining agreement. *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. at 914; *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

---

**3.** Stated another way, plaintiff's claims for false arrest and malicious prosecution (and the inju-

ries resulting therefrom) are predicated upon her status as an arrestee, not as an employee.

The Supreme Court ruled in *Vaca* that a "wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation with its handling of the employee's grievance." *Vaca*, 386 U.S. at 186, 87 S.Ct. at 914. In addition, an employee is not limited to the exclusive remedial procedures established by the contract when the conduct of the employer amounts to a repudiation of these contractual procedures. *Id.* at 185, 87 S.Ct. at 914. The Supreme Court in *Vaca* cautioned that settlement of a grievance short of arbitration does not mean the union necessarily breached its duty of fair representation. *Id.* at 192, 87 S.Ct. at 918. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining agreement is arbitrary, discriminatory or in bad faith." *Id.* at 190, 87 S.Ct. at 916.

This exhaustion requirement has been further eroded in recent decisions in which the Supreme Court has created a case-by-case factual standard governing exhaustion, depending on when it becomes clear that any effort to proceed formally with contractual or administrative remedies would be wholly futile. *Glover v. St. Louis–San Francisco Railway Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). In *Glover*, the Court found that it would be futile to require plaintiffs to submit their claims of race discrimination to a grievance procedure administered by the union, the company, or both when these are the very groups about which their real complaint was made. *Id.* at 330, 89 S.Ct. at 551. Under those circumstances, the Court held that the "attempt" to exhaust contractual remedies required under *Maddox* "is easily satisfied by petitioners' repeated complaints to company and union officials, and no time consuming formalities should be demanded of them." *Id.*

In the present case, there is no question that the collective bargaining agreement provided an additional grievance step which plaintiff did not utilize—arbitration. More-

over, it is clear from the collective bargaining agreement that the contractual grievance procedures including arbitration were intended to be the parties' exclusive remedy. Article 14 of the agreement between Local 1262 and Supermarkets General states:

(a) All disputes, differences or grievances as to the interpretation or application of the provisions of this Agreement *shall* be settled in the following manner.

Sheeran Aff., Exh. B at 15 (emphasis added). Since there is no allegation that the Pathmark defendants repudiated these contractual procedures, the exceptions to the general rule of exhaustion available to Cole are futility and breach of the union's duty of fair representation.

There is no evidence in the record that Cole requested that her case proceed to arbitration or that such a request was specifically denied by the union. The facts, as recounted by plaintiff, are that after her acquittal in state court, Mr. Pizzi, Cole's union representative, arranged a meeting between Pathmark, plaintiff and himself. Plaintiff recounts the events of that meeting as follows:

At this meeting in October 1985, the Union Representative agreed with Pathmark that because plaintiff had violated company policy, she could not get her job back. The futility of further pursuit of contractual remedies was explained to plaintiff by her Union Representative, who told her to go home and forget it, since he was unable to help her. Pathmark has a history of discharging cashiers.

Plaintiff's Brief at 8. Plaintiff does not state that she questioned these conclusions or took her case beyond her union representative to the union itself. Plaintiff attempts to bolster her argument by trying to show that Pathmark has a history of discharging cashiers who performed at her high level. Pl. Brief at 9.

Reading the facts of the present case in the light most favorable to the plaintiff, this Court is not persuaded that Cole satisfied the requirement stated in *Maddox* that

she attempt to exhaust her contractual remedies. Even where it is argued that pursuit of contractual grievance procedures would be futile, the Supreme Court has made clear that plaintiff must still attempt to satisfy this requirement, which can be done by making a showing that the employee made repeated complaints to the company and union officials. No such showing has been made in the present case. Plaintiff cannot rely on the futility exception to excuse her failure to exhaust contractual grievance procedures.

■ Nor can Plaintiff prevail by asserting the remaining exception to the exhaustion requirement—the union's breach of its duty of fair representation. Assuming plaintiff can make a showing that this exception is applicable in the present action, which may be difficult in that there is no evidence of arbitrary, discretionary or bad faith conduct on the part of the union, her § 301 claim then becomes a type of "hybrid" action which is barred by the six-month statute of limitations applicable to these suits under *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

In *DelCostello,* an employee brought suit to vacate an arbitration award. The court characterized this as a "hybrid" action under § 301, because the employee sued his employer for breach of a collective bargaining agreement and the union for breach of its duty of fair representation, which is an implied cause of action under under § 301. The basis of the *DelCostello* Court's adoption of the six-month statute of limitations in § 10(b) of the NLRA, 29 U.S.C. § 160(b) governing unfair labor practices was a recognition that borrowing the statute of limitations from state actions dealing with contracts or commercial arbitrations as required under the Supreme Court's directive in *Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), was at best an imperfect analogy to a hybrid § 301 suit. *DelCostello,* 462 U.S. at 169–72, 103 S.Ct. at 2293–95. The Court found that the policy determination under-

lying the NLRA's six-month limitations period (The need for expeditious dispute resolution in the labor area and for uniform procedural treatment of similar claims weighs against an employee's need for lengthy periods in which to vindicate his rights.) applied to hybrid § 301 actions which bear a close resemblance to an unfair labor practice under the NLRA. *DelCostello,* at 170–71, 103 S.Ct. at 2293–94. The Court concluded that it would disregard a state law statute of limitations "when a rule from elsewhere in federal law provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate rule for interstitial lawmaking ..." *Id.* at 172, 103 S.Ct. at 2294.

In interpreting the Supreme Court's decision in *DelCostello,* the Third Circuit has found no distinction between a suit to vacate an arbitration award at issue there and actions seeking enforcement of such awards. *See Taylor v. Ford Motor Co.,* 761 F.2d 931, 933 (3d Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986). In *Taylor,* the Third Circuit found that wherever the "family resemblance" to an unfair labor practice exists, "the need for rapid resolution of labor disputes and for uniformity mandates application of the NLRA's six-month limitations period, absent some countervailing federal policy." *Id.* Thus, the Third Circuit found the six-month limitations period of § 10(b) of the NLRA applies to a hybrid § 301 action to enforce an arbitration award. *Id.*

In *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.,* 736 F.2d 896 (3d Cir.1984), the Third Circuit was presented with the question of what statute of limitations applies to an action by a union under § 301(a) to compel an employer to arbitrate an employee's grievance in accordance with the terms of the collective bargaining agreement. In addressing the issue of whether straightforward actions under § 301, as opposed to a hybrid § 301 claim, are still bound by the rule expressed in *Hoosier Cardinal* referring claims under § 301 to

the most analogous state statute of limitations, the court quoted extensively from footnote 12 in *DelCostello,* in which Justice Brennan observed:

> even if this action were considered as arising solely under § 301 ... the objections to use of state law and the availability of a well-suited limitations period in § 10(b) would call for application of the latter rule.

462 U.S. 158, n. 12, 103 S.Ct. 2287 n. 12. The court in *Westinghouse* read this footnote as signaling that the applicability of *Hoosier Cardinal* to pure § 301 suits is now an open question. 736 F.2d at 901. For the same reason relied on in *DelCostello* for borrowing the limitations period from § 10(b) for hybrid § 301 suits, the Third Circuit determined that that limitations period should be borrowed for application to actions under § 301 to compel arbitration. *Id. Accord McCreedy v. Local Union No. 971, United Automobile Workers,* 809 F.2d 1232 (6th Cir.1987); *Teamsters Union Local 315 v. Great Western Chemical Co.,* 781 F.2d 764 (9th Cir. 1986); *Int'l Ass'n of Machinists and Aerospace Workers, Local Lodge No. 1688 v. Allied Products Corp.,* 786 F.2d 1561 (11th Cir.1986).

In the present case, it has been established that in order for plaintiff to succeed in arguing that she is excused from her failure to exhaust contractual remedies, she must establish that the union acted in such an arbitrary, discriminatory or bad faith manner in not processing her grievance through to arbitration as to constitute a breach of the union's duty of fair representation. Thus, even though plaintiff did not name the union as a defendant, such a claim is inextricably intertwined with her present cause of action. This characterization of the nature of plaintiff's action is consistent with the Supreme Court's analysis in *DelCostello.* There, the Court found that in the case of an employee's claim against his employer for breach of a collective bargaining agreement, in the situation where the employee has not exhausted his grievance through the procedures provided in the agreement because the union breached its duty of fair representation,

the two claims are inextricably interdependent.... The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

462 U.S. at 164, 103 S.Ct. at 2290. This same result has been reached by other courts where both the union and the employer have not been sued but in fact a hybrid claim implicitely exists. *Conley v. Int'l Brotherhood of Electrical Workers, Local 639,* 810 F.2d 913 (9th Cir.1987). *Lumpkin v. Int'l Harvester Co.,* 125 L.R. R.M. (BNA) 2244 (N.D.Ill.1986); *Mallory v. Ingersoll–Rand Co.,* 621 F.Supp. 1040 (W.D.Va.1985).

The underlying purpose of *DelCostello*— to provide a uniform limitations period where a case involves the consensual processes of a collective bargaining agreement and the settlement of disputes under it—is furthered by its application here. In the present case, after plaintiff was told by her union representative that it was pointless to pursue her contractual grievance procedures she waited more than one year to file this action. Therefore, this Court finds that if plaintiff's complaint is read to contain allegations that Local 1262 breached its duty of fair representation to Cole, thereby precluding dismissal of plaintiff's complaint for failure to exhaust contract grievance procedures, her complaint, now properly characterized as a hybrid § 301 action, must be dismissed for plaintiff's failure to file the present action within the six-month statute of limitations applicable to such actions under *DelCostello.*

## C. *Plaintiff's State Law Claims*

▮▮▮ What remains before the Court are plaintiff's state law claims for false imprisonment/arrest (First Count) and malicious prosecution (Second Count) against the Pathmark defendants, as well as multiple state law claims against defendant Caffrey. Under the Supreme Court's decision in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), these claims could be dismissed. In *Gibbs,* the Court observed that state law claims

joined to federal questions should usually be dismissed if the federal questions to which they are attached are dismissed without prejudice pretrial. 383 U.S. at 725–27, 86 S.Ct. at 1138–40. In the instant action, once plaintiff's § 301 claim is dismissed, no federal jurisdiction exists over the remaining claims in her complaint alleging state law causes of action. Thus, under *Gibbs*, dismissal without prejudice is appropriate.

However, the present case presents a somewhat different situation in that it was initially filed in state court and then removed here. In that situation, once the basis for federal jurisdiction is dropped, it is within the district court's discretion whether to hear the rest of the case or remand it to the state court from which it was removed. *Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir.1986). In exercising its discretion to remand once the claims against two Federal Reserve Banks, which was the basis for federal subject matter jurisdiction, were dismissed, the district court in *Washington Petroleum & Supply Co. v. Girard Bank*, 629 F.Supp. 1224, 1231 (M.D.Pa.1983), explained:

> Where the federal hand of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims it is ... akin the 'making the tail wag the dog' for the District Court to retain jurisdiction.... These considerations give rise to a discretion in the District Court to dismiss the complaint and remand the case to the State Court.

*Id.* (quoting *Murphy v. Kodz*, 351 F.2d 163, 167–68 (9th Cir.1965)). Under the circumstances of this case, the Court believes the appropriate course of action is to remand to the Superior Court of New Jersey, Law Division, Bergen County. *Boyle v. Carnegie–Mellon University*, 648 F.Supp. 1318, 1321 (W.D.Pa.1985), *aff'd on rehearing sub nom. Carnegie–Mellon University v. Cohill*, 55 U.S.L.W. 2342 (3d Cir. Nov. 15, 1986) (equally divided U.S. Court of Appeals for Third Circuit sitting en banc), *cert. granted*, — U.S. —, 107 S.Ct. 1283, 94 L.Ed.2d 141 (1987) (after dismissal of the federal claim, district court, in its discretion, declined to retain jurisdiction over

pendent state law claims, which it remanded back to state court).